## FLOWER et al v. THEIR CREDITORS.

Since the promulgation of the Code of 1825 partnership creditors have been entitled to share equally with the individual creditors in the distribution of the individual assets, it being declared by art. 3152 of that Code that a privilege can be claimed only for those debts for which it is expressly provided. The rule was different before the adoption of that Code. The right of partnership creditors to be paid by preference out of partnership funds, is expressly established by art. 2794 of the Civil Code.

APPEAL from the Third District Court of New Orleans, *Kennedy,* J. *Roselius,* for the appellants. The only question which this case presents is, whether the individual creditors of *William Flower* are entitled to be paid

---

*The order of 12 Feb. 1847, was made "without prejudice to the rights of the opposite party."

FLOWER
v.
CREDITORS.

the full amount of their claims out of the assets surrendered by him; or whether the partnership creditors have a right to participate *pari passu* with the personal creditors, in the distribution of those funds? The judge below decided this question in favor of the opposing creditors; from which decision the individual creditors have taken this appeal. It is contended that as the opponents are creditors of a commercial partnership, the question presented for decision is governed by the commercial law. If I am correct in this position, the case is free from difficulty; for the rule of that system of law is well settled. See Story on Partnership, no. 376. 3 Kent's Comm. sec. 43, p. 64. *Murray* v. *Murray*, 5 Johns. Ch. Rep. p. 71. See also Gow on Partnership, p. 235-6, 3d ed. *Twiss* v. *Massey*, 1 Atk. p. 67. *Ex parte Cook*, 2 P. Will. p. 500. *Ex parte Elton*, 3 Ves. p. 240. *Ex parte Abell*, 4 Ves. p. 837. *Ex parte Clay*, 6 Ves. p, 833. *Bolton* v. *Puller*, 1 Bos. and Pull. pp. 539, 544. Watson on Partnership, pp. 262, 263, 2d ed. Ib. p. 324 to 334. The late bankrupt law of Congress recognized the same principle.

That the rule was the same in Louisiana previous to the enactment of the Code of 1825, is admitted. But it is contended, on the authority of *Morgan* v. *His Creditors*, 8 N. S. 599 *et seq.*, that the rule has been changed by the provisions of arts. 2794 and 3152 of that Code.

With all deference I insist that that case is not good law; and I do this with-the more confidence, as in a subsequent case, that of *Hagan* v. *Scott*, 10 La. 348, Judge Martin, who was the organ of the court, laid down the law as follows: "So far as regards W. P. Scott's interest in the undivided half of the lot of ground, it is shown that J. B. Scott assumed and paid debts of his vendor to the full amount of the value of that share. These last debts were separate ones of W. P. Scott, and his separate creditors had a right to be paid out of separate property, paramount to the claims of the creditors of any partnership in which he had been concerned." The judge of the district court seems to have considered this as a mere *obiter dictum*. But a reference to the case will show that it turned almost exclusively upon the decision of that question; for if it had not been for the paramount claim of the separate creditors of W. P. Scott to be paid out of his separate property, the sale to J. B. Scott would have been clearly fraudulent.

That the question to be decided in this case, falls within the dominion of the commercial law, is plain. Has the commercial law, with regard to the point under consideration, been altered by the Civil Code of 1825? A negative answer to this question results from the fact, that the legislature contemplated the enactment of a Commercial Code, simultaneously with the Civil Code. Art. 2798 of that Code, provides that: " Commercial partnerships are divided into two kinds, general and special; they form the subject of a title in the Commercial Code; but the articles of this title govern them in all points in which there is no repugnance between the articles of this title and those contained in the Commercial Code. Where such repugnance exists, the latter must, as to commercial partnerships, prevail. And again, in art. 2823: " The particular rules, by which commercial partnerships are governed, will be found in the Commercial Code. All the provisions of this title, not repugnant to those contained in that Code, are also applicable to commercial partnerships.

Notwithstanding this special reference to it, no Commercial Code was ever adopted. In this state of things it is but reasonable to conclude that the general commercial law, which was in force at the time, stands in lieu of the contemplated Code.

I am aware that it may be objected that the Commercial Code never received legislative sanction. This is true; but does it follow that, in the anomalous state of our legislation on this subject, we cannot refer to this Code for the purpose of ascertaining whether the legislature intended to introduce a change in the commercial law of the country by article 2794? I admit that if this article, in express terms, referred to commercial partnerships, its provisions would govern the case at bar, notwithstanding their conflict with article 138 of the project of the Commercial Code. But does the art. 2794 speak of commercial partnerships? Certainly not.

It is not my business to impugn the correctness of the decision in *Morgan* v. *His Creditors*, if it is limited to ordinary partnerships. To persist in applying it to commercial partnerships, would be in direct opposition to the will of the law-maker, as clearly manifested by his express declarations. There can scarcely be a doubt, that if the attention of the court, in the argument of the

191

FLOWER
v.
CREDITORS.

case of *Morgan* v. *His Creditors*, had been called to the 138th article of the Commercial Code, the decision would have been different. I am fortified in this opinion by the views expressed and decision rendered by the same court, in the case of *Kimbal* v. *Blanc et al.*, 8 N. S. 386 *et seq.*, and decided only two months before that of *Morgan* v. *His Creditors*.

It is true that the provisions of the 3152d art. of the Civil Code conflict with the doctrine which we have endeavored to establish? That article enacts that, " Privilege can be claimed only for those debts, to which it is expressly granted in this Code." But we must not forget that this Code expressly provides, that its enactments are inapplicable to commercial partnerships, unless they are in harmony with those of the Commercial Code. C. C. 2798. The reasoning would certainly be fallacious, if not absurd, to say, in the language of the article just cited, " the articles of this title govern commercial partnerships in all points in which there is no repugnance between them and those contained in the Commercial Code ; where such repugnance exists, the latter must, as to commercial partnerships, prevail ;" but the Commercial Code has never received legislative sanction ; therefore, all the articles under the title of partnership in the Civil Code are applicable to, and govern commercial partnerships. This is a defective syllogism ; it is what logicians call a *non sequitur*. According to sound and correct logic, the conclusion, it is respectfully submitted, ought to be the very reverse. To state the argument again, it should stand thus : the applicability of the provisions of the Civil Code, is made to depend on their conformity with those of the Commercial Code ; but as the latter Code has never been adopted, it is impossible to ascertain whether such conformity exists ; consequently, none of the provisions of the Civil Code are applicable to commercial partnerships. Besides, it is impossible in the nature of things to apply all the provisions inserted in the Civil Code under this title, to commercial partnerships. How, then, is it possible, in the absence of the Commercial Code, to discriminate between those that are applicable to commercial partnerships, and those that are not?

*R. N.*, and *A. N. Ogden*, contra.

The judgment of the court was pronounced by

SLIDELL, J. The question presented to us in this case is, whether the individual creditors of *William Flower* are entitled to be paid the full amount of their claims out of the assets surrendered by him ; or whether the partnership creditors have a right to participate *pari passu* with the individual creditors in the distribution of those funds. The district judge decided the question in favor of the partnership creditors, and the individual creditors have appealed.

We have carefully perused the elaborate argument presented by the appellants, and are not insensible to the plausibility and force of the view he has taken of the case ; but we are not at liberty to regard this question as an open one. The question first arose under the Code of 1825, in the case of *Morgan* v. *His Creditors*, 8 Martin N. S. 600. It was considered at length by Judge Martin, as the organ of the court. It was then held that the rule of law, as it existed previous to the adoption of the new Code, had been changed ; that under the new Code partnership creditors are entitled to be paid by preference out of the partnership assets, because that preference is expressly declared by art. 2794 ; that they are entitled to share rateably with the individual creditors in the distribution of the individual assets, because by article 3152 it is declared that privilege can be claimed only for those debts for which it is *expressly* granted. The court noticed the fact that, at the time the new Code was adopted, a Code of Commerce was contemplated, and was the subject of frequent reference in the Civil Code ; but as the Code of Commerce was not adopted, it was the opinion of the court that the Civil Code, as adopted in 1825, was conclusive upon the question, and the right of partnership creditors to participate on an equal footing with the individual creditors in the distribution of individual assets was fully and solemnly recognized.

FLOWER
v.
CREDITORS.

But it is said by the learned counsel for the appellants that, there can scarce-ly be a doubt that if the attention of the court, in the argument of the case of *Morgan* v. *His Creditors*, had been called to the 138th article of the Commercial Code, as prepared by the jurists commissioned for that purpose, although not adopted, the decision would have been different. It is correctly stated by counsel that the proposed Commercial Code did expressly grant the separate creditors a preference upon the separate estate, thus following the pre-existing law, and harmonizing with the jurisprudence of the other States of this Union, of England, of Spain, and of Rome; but the learned counsel has been misled in this particular by the meagre manner in which that case was reported. No argument of counsel was given by the reporter; but, upon examining the record, we find an elaborate brief, in which the proposed Code of Commerce is quoted, and the same argument substantially presented as has been deduced from the same source on the present occasion.

In the case of *Town* v. *Morgan's Syndics*, 2 La. Rep. 112, the doctrine recognized in *Morgan* v. *His Creditors* was repeated. The question then was, by which Code the rights of the holder of Morgan's individual note were to be controlled, the note having been endorsed by him while the Code of 1808 was in force, and having matured after the adoption of the new Code; and it was then said, as in the former case, that by the old Code the creditor would be entitled to be paid by preference out of the individual estate; but that if the new Code were applicable he must share *pro rata* with the partnership creditors. The point therefore was distinctly before the court.

Again in *Bernard* v. *Dufour*, 17 La. Rep. 599, the rule was treated as the familiar and undisputed doctrine, upon the authority of *Morgan* v. *Creditors*, which was cited.

The only cases cited by counsel which clash with the authorities above mentioned is, *Hagan* v. *Scott*, 10 La. Rep. 349. But it is impossible to consider the incidental *dictum* which that case presents as seriously impairing the authority of *Morgan* v. *His Creditors*. It could only have originated from a hasty reference to the defective marginal note of the case, in which the rule under the old Code only is stated, and that under the new Code is entirely omitted, although expressly recognized by the court.

The rule which was, after careful argument deliberately adopted and declared as far back as 1830, and which our courts have since, as we believe, uniformly followed in the distribution of insolvent estates, has become a practical rule of property, and we do not feel at liberty to disturb it. The profession have acquiesced in it for many years, the public have acted upon it, and, though its correctness may be debateable, it certainly does not fall within the category of those gross errors which no length of time or right of authority are permitted to sanction.                    *Judgment affirmed.*